IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.     No. 15-CR-4302MCA
       15-CR-4082MCA

DAVON LYMON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the *United States' Opposed Motion to Vacate Sentencing*, filed November 9, 2016; and the *United States' Motion to Consolidate Cases for Sentencing*, filed November 30, 2016.  [Doc. 70; Doc. 74]  The Court has considered the parties' submissions, the relevant law, and has been otherwise fully advised.  For the reasons that follow, the Governments' Motions are **DENIED**.

**DISCUSSION**

In its *Opposed Motion to Vacate Sentencing* (*Motion to Vacate*) the Government seeks to vacate sentencing in 15-cr-4302, in which case Defendant pleaded guilty to two counts of selling controlled substances to an undercover ATF agent, and one count of possession of a firearm, which Defendant who is a felon, sold to the ATF agent.  [Doc. 65; Doc. 75]  Relatedly, in its *Motion to Consolidate Cases for Sentencing* (*Motion to Consolidate*) the Government seeks to consolidate for sentencing 15-cr-4302 with 15-cr-4082, in which Defendant has been adjudged guilty of one count of possession of a firearm, and has yet to be tried on three remaining counts of firearm-related felonies.

[Doc. 119; Doc. 71]  In the Government's view, Defendant should not be sentenced in any of the matters before this Court until the state has prosecuted Defendant for the murder of Officer Daniel Webster.  [Doc. 70 p. 3]  The likely consequence of postponing sentencing in 15-cr-4302, consolidating it for sentencing with 15-cr-4082, and delaying sentencing altogether until the state has prosecuted its yet-to-be-indicted murder case against Defendant, is to maximize, and in effect vastly increase, the length of Defendant's prospective sentence under the federal sentencing guidelines.

The Government advances two theories in support of its *Motion to Vacate*.  The first is that vacatur could prevent theoretical complications under the Interstate Agreement on Detainers (the IAD).  The Government's argument in this regard is unpersuasive.

The IAD is an agreement among several states, including New Mexico and the federal government that is designed to provide cooperative procedures for the prompt and orderly disposition of detainers arising from untried indictments, criminal informations, or complaints.  18 U.S.C.A. App. 2 § 2, Art. I.  The IAD was prompted by the notion that a prisoner facing a detainer may become despondent and, therefore, less responsive to rehabilitation.  This was explained by the Supreme Court in *Carchman v. Nash*, 473 U.S. 716, 720 (1985):

> The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program.  He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps.  In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he

will not offend again.  Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated.

The IAD was "motivated in part by a practice of filing detainers based on untried criminal charges that had little basis."  *Id.* at 729.  Although the baseless detainers would often be withdrawn shortly before the prisoner was released, they will have already detrimentally affected the prisoner's rehabilitation.  *Id.* at 730.

The IAD has three main components which, respectively, give rights to a prisoner facing a detainer; give rights to a state that has imposed a detainer; and impose an obligation on a state that is holding a prisoner facing a detainer.  Summarized, the rights and obligations are as follows.

The IAD gives a prisoner of one state the right, upon his request, to be brought to trial on charges underlying a detainer lodged by another state.  It provides that a prisoner who "has entered upon a term of imprisonment in a penal or correctional institution of a party State" and who is the subject of a detainer arising from an untried indictment, information, or complaint in another state may make a formal request for a final disposition of the pending charges.  18 U.S.C.A. App. 2 § 2, Art. III.  Provided that the prisoner's request satisfies certain requirements, and in the absence of good cause for a continuance, the prisoner is entitled to "be brought to trial within 180 days" of his request.  *Id.*

The IAD also gives the state that has lodged a detainer the right to temporary custody of the prisoner so that the prisoner may be tried on the charges underlying the detainer. *Id.* Art. IV.  Unlike the circumstance in which the prisoner initiates the request to resolve

the charges underlying detainer whereupon trial must commence within 180 days, when the process is initiated by the receiving state the matter must be brought to trial within 120 days. *Id.* Art. IV(c).

Finally, the IAD requires the state that has custody of the defendant (called the "sending state") to "deliver temporary custody of such prisoner to the appropriate authority in the State where such indictment, information, or complaint is pending against [him] in order that speedy and efficient prosecution may be had." 18 U.S.C.A. App. 2 § 2, Art. V.

The Government's invocation of the IAD is premised on a provision of the IAD that prohibits "shuttling" a prisoner back and forth between jurisdictions. [Doc. 70 p. 3] Under the so called "anti-shuttling provision," once a receiving state has temporary custody of the prisoner the receiving state must fully adjudicate the charges that underlay the detainer before returning him to the sending state. *Alabama v. Bozeman*, 533 U.S. 146, 149 (2001). If the receiving state returns the prisoner to the sending state without finally disposing of the charges, the receiving state must dismiss the charges underlying the detainer. *Id.*; *see* 18 U.S.C.A. App. 2 § 2 Art. III(d) (pertaining to a request initiated by a prisoner; stating "[i]f trial is not had . . . prior to the return of the prisoner to the original place of imprisonment, such indictment information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."); *id.* Art. IV(e) (pertaining to a request initiated by the receiving state; stating "[i]f trial is not had . . . prior to the prisoner's being returned to the original place of imprisonment . . . such indictment information, or complaint shall not be of any further

force or effect, and the court shall enter an order dismissing the same with prejudice"). The IAD, and by extension its anti-shuttling provision, does not apply to a pre-trial detainee or to a defendant who has been sentenced but has yet to be taken to the correctional facility where he will serve his sentence. *Crooker v. U.S.*, 814 F.2d 75, 77-78 (1st Cir. 1987).

The Government's reliance on the IAD as a ground for postponing sentencing is founded upon its speculative and hypothetical concern that the state could violate the anti-shuttling clause which would force the state to dismiss its prospective murder case against Defendant. This remote possibility is not a recognized ground for delaying sentencing. The Court will not delay sentencing Defendant in 15-cr-4302 on the basis of the Government's invocation of the IAD.

The second theory advanced by the Government in support of its *Motion to Vacate* is that the Sixth Amendment right to a speedy trial does not apply to sentencing. [Doc. 70 p. 3] This principle was recently established by our Supreme Court in *Betterman v. Montana*, 136 S.Ct. 1609, 1613 (2016). However, as the *Betterman* Court explained, this "does not mean . . . that defendants lack any protection against undue delay at [the sentencing] stage." *Betterman*, 136 S.Ct. at 1617.

The right to be sentenced without undue delay is safeguarded by statutes and rules. *Id.* Fed. R. Crim. P. 32(b)(1), which is "[t]he federal rule on point directs the court to 'impose sentence without unnecessary delay.'" *Betterman*, 136 S.Ct. at 1617. And, the *Betterman* Court cautioned, even after a conviction, a defendant has a due process right to "a sentencing proceeding that is fundamentally fair." *Id.*

5

Glossing over the notion of fundamental fairness in sentencing, the Government observes that Defendant would suffer only a "short delay" in sentencing. Given the Government's expressed preference for this Court to delay sentencing until the state concludes its yet unindicted murder case, this "short delay" would encompass the unknowable amount of time required by the state to indict and prosecute Defendant for the October 21, 2015 murder of Officer Webster. Accepting the Government's assertion that the time required by the state to effect the murder prosecution will amount to a "short delay" in sentencing Defendant on the federal charges before this Court (an entirely speculative assertion on the Government's behalf), the Court remains unpersuaded that this delay would comport with Rule 32(b)(1) or with the notion of fundamental fairness.

Rule 32(b)(1) does not provide this Court with a mandate to measure sentencing delays in terms of whether they are conceptually "short" or "lengthy." Rather, the rule directs the Court to avoid an *unnecessary* delay. A sentencing hearing is necessarily delayed, for example, by the probation office's preparation, and the parties' and court's review of a presentence investigation report. *Betterman*, 136 S.Ct. at 1616. The Government cites no authority for the proposition that to delay sentencing a federal defendant pending the outcome of a state prosecution comes within the ambit of "necessary" delay. Factoring in Defendant's fundamental right to fair sentencing, it strikes the Court as fundamentally *unfair* to delay sentencing Defendant in 15-cr-4302 for crimes that, having occurred on September 11 and October 2, 2015 respectively, are unrelated to the October 21, 2015 murder of Officer Webster.

**CONCLUSION**

So as to avoid unnecessary delay in sentencing in accordance with the requirements of Rule 32(b)(1), and in recognition of Defendant's right to fundamental fairness in sentencing, the Court will deny the Government's *Motion to Vacate*. Defendant shall be sentenced in 15-cr-4302 at a hearing before this Court to be set by separate Order.

This Court further concludes that there is no legal basis for consolidation of the cases for sentencing purposes, and thus the Government's *Motion to Consolidate* will be denied.

**IT IS THEREFORD HEREBY ORDERED** that the *United States' Opposed Motion to Vacate Sentencing*, filed November 9, 2016 (Doc. 70), is **DENIED**.

**IT IS FURTHER ORDERED** that The *United States' Motion to Consolidate Cases for Sentencing*, (Doc. 74) filed November 30, 2016 is **DENIED**.

**SO ORDERED** this 9th day of December, 2016 in Albuquerque, New Mexico.

_____
 **M. CHRISTINA ARMIJO**
 **Chief United States District Judge**